Johnson, J.,
delivered the opinion of the Court.
Departing from the order which the counsel for the complainant have pursued, in arguing the grounds of appeal in this case, I will consider them first, in reference to the state of the account be. tween the defendants, Boyer, and Schroder; and without intending to decide, whether there was, or was not, any intentional fraud, and collusion between them, I think I shall be able to demonstrate, that injustice will be done to the complainant, if he is to be concluded by the decree by which the account was settled.
I will premise, that the decree is predicated on an equal parti, tion of the whole nett proceeds of the personal estate of Jacob H. Boyer, amongst his three children; which gave to Jacob F. Boyer, the sum of $1,144.91, the amount of the decree, in which no credit was asked, or allowed. In the investigation, before the ordinary, when the complainant was a party, it was discovered, that Boyer had purchased, at the sale of the estate, property, to the amount of $137.91, which would leave a balance due to him, of only $1,007 ; and Schroder states, in his answer, that, in addition to this, he had made other advances to Boyer, in money, and goods, amounting in all, to $828.62. Boyer, in his answer, admits, that he had, from time to time, received from him, goods, clothing, and *338 money, in small sums, without stating the amount; although he expresses his surprise, at its amounting to so much : but, so far from contesting the charge, he seems impliedly to admit it, by a proposition to apply it to the payment of other accounts between them. If this amount is to be credited to the account of the estate, then Schroder will be only indebted to him, in the sum of $178.38. Boyer insists, however, that it should be applied to the payment of his other demands, which consist of the two notes, amounting together, to $562 ; but whether the advances were made before the date of the notes, and could not, therefore, have been intended to have been applied to the payment of them, or, whether there was any agreement, that they should be so applied, does not appear. Admitting, however, that they must be so applied, there would still be a balance of $404,53, applicable to his demand against Schroder, on account of the administration.
In regard to Schroder’s bond, I am very clear, that if, as it is stated, the lot was sold under execution, subject to the mortgage, and purchased by Boyer, the bond is extinguished. The equity of redemption, was all that Schroder had in the lot, upon which an execution could operate ; and that having been sold, and vested in Boyer, his right to redeem was gone. The mortgage vested the lot in Boyer, subject only to this right to redeem; and having purchased in that, the land became absolutely his, and he cannot have both that, and the purchase money. Boyer had, unquestionably, the right to buy, and Schroder to sell, and release his equity of redemption ; and whether he sells, or it is sold under legal authority, the legal consequences, are precisely the same.
No account has been stated between these parties, but the facts above referred to, have been collected from the Chancellor’s notes of the evidence taken on the hearing ; and they are used, only as furnishing a strong, if not irresistible presumption, that injustice would be done to the complainant, without a further investigation of them through a reference to the master. I ought to add, that I concur entirely with the Chancellor, as to the charge for board. It is clear, from all the circumstances, that it was never intended that Boyer should pay for his board in Schroder’s family, into which he was received as a relative, and friend ; and if originally a gra. tuity, it cannot now be set up as a debt.
I come now to consider the case in reference to the liability of the complainant, for the amount claimed by the defendants, Marshburn, and wife, as the distributive share of Mrs. Wirtemburgh, in her father’s estate; to which, as her distributees, these defendants are *339 now intitled. Schroder also administered on the estate of Mrs. Wirtemburgh, and is unquestionably bound, to account to Marsh-burn, and wife ; but all the authorities concur, that a debt due by an administrator, to his intestate’s estate, is assets in his hands. Whatever, therefore, Schroder owed to Mrs. Wirtemburgh, Whether on this or on any other account is immaterial, constituted so much of her estate in his hands, for which he is bound to account, as her administrator, to all persons interested in her est.ate ; and his liability to Marshburn, and wife, must be referred to that character. The same result follows, from a consideration of the nature of the undertaking of the surety to an administration bond. The whole object, end, and aim, of the bond, is, to secure the payment of the proceeds of the estate, to those who may be legally intitled to receive them. Now, upon the death of Mrs. Wirtemburgh, Schroder, himself, as her administrator, was alone intitled to receive her dividend, of the estate of her father, Jacob H. Boyer. It was in his hands, and the condition of the bond was not only legally, but literally, fulfilled. Again, the undertaking of the surety, is in reference to the law, which intitles him to be relieved, if there are well grounded suspicions, that the administrator is wasting the estate, by revoking his administration, or compelling him to find other security ; and without his own consent, neither the occurrence of any adventitious circumstances, nor the act of any one, could change the character of that liability. But if it be true, that he is liable for the funds, which the administrator is intitled to retain in his hands, it is in vain that you revoke his administration, and grant another, for that would not divest him of his right to retain the funds.
joyner BaSey^ra.
But the claims of Marshburn, and wife, upon the complainant, are removed still one degree further. Schroder was appointed, and I suppose regularly, and upon sufficient security, the guardian of Mrs. Marshburn, when she was an infant; and the necessary consequence of this was, that the amount in his hands, to which she was intitled, as distributee of her mother, became so much held by him, in trust for her, as her guardian : and according to M’Dowell v. Caldwell, 2 M’C. Ch. 55, the sureties to his guardianship bond are responsible for it.
The decree of the ordinary is wholly inoperative, as to the complainant. As the surety, he is under no obligation to account before the ordinary; but his undertaking was, that his principal should account, and he had accounted in the Court of Equity. The ordi. nary has no jurisdiction to enforce the bond, and his decree as to the surety, is a mere nullity.
*340 The circumstances referred to, constitute a complete bar to the right of Marshburn, and wife, to recover at law ; and there was, therefore, no necessity for the complainant’s coming into this Court for relief. As to them, the bill must, therefore, stand- dismissed.
The decree of the Circuit Court, so far as it dismisses the bill as to the other defendants, is reversed : and it is referred to the master, to state an account between the defendants,,Schroder, the administrator of Jacob H. Boyer, and Jacob F. Boyer, the distributee ; in which the complainant must be allowed to shew, what sums have been paid, and advanced, by Schroder to Boyer, either in cash, or otherwise, on that account.
Nott, J., and Cojlcock, J., concurred.
The cause again came up, before De Saussuke, Chancellor, in January, 1830, upon-exceptions to a report of the master, made in pursuance* of the foregoing decree. So much of this report, as is material, is as follows.
“ It was contended by the defendant, Boyer, that Schroder was indebted tó him, for a large quantity of bacon sold to him. The claim was not only a very old one, but the evidence to sustain it was altogether insufficient; and I therefore rejected it.
But the principal difficulty in this case arises from two notes of Schroder’s, produced on the part of Boyer, and to the extinguishment of which, he insisted that he had a right to apply the advances, received by him from. Schroder.
The first note is dated in 1816, and is made payable to “ Jacob Boyer.” There was no evidence of the consideration ; nor did it appear that the payee was the Jacob Boyer, who is the party to these proceedings. His father, whose name was also Jacob, was iiving at the date of the note ; and it is much more probable, that the note was given to him, than the son. Considering the circumstances of suspicion attending this very stale claim, and in the absence of any evidence to clear up the mystery, I have rejected it.
The other note bears date in October, 1825. It appears, from-Mr. Ford’s testimony, that the note had been prepared by him, at the time it bears date ; but it was not signed by Schroder, until March, 1826, on the evening before the day, on which a meeting was to be had before the ordinary, for the investigation of Schroder’s accounts. This was after Boyer had obtained his decree against Schroder, and long after all the advances had been made by tlie latter. The inference that I draw from these circumstances is, ihat the note was a settlement in full of all the transactions between the parties, up to the time it bears date; and this view may derive *341 force from the fact, that the note was prepared before the proceed. ings were instituted, upon which Boyer obtained his decree against Schroder, as administrator. Boyer, indeed, alleges that the note was given as an acknowledgment for a sum of money loaned about the year 1819, for which he had not before possessed any voucher; but no evidence of this loan, or of Boyer’s ever having means to make it, were produced before me.-
H. A. De Saussure, for the motion.
Dunkin, and Pepoon, contra.
The circumstances in which the parties stood to each other, and the time when the note was executed, seem to indicate that there was collusion between them. It appears strange, that Schroder should have given a note at this late day, if his advances, previously made, had been intended to be applied to this loan. The advances greatly exceed the loan, and if the note was the acknowledgnient of an old debt, why was not a counter-acknowledgment given for the advances ? It seems to me, that it was incumbent on Boyer, from the suspicion thrown upon this note, to have produced additional, and full evidence, of the consideration. This hé has failed to do, and I think, therefore, that he ought hot tó be allowed to set it up now, to the prejudice of the complainant; but that he shoiild be left to pursue his remedy against Schroder, and not fasten this suspicious- debt, on the surety to his administration" bond.
I therefore respectfully report, that the advances made by Schrbder to Boyer, amount to $966.53, which must be deducted from $1,144.91, the amount of the decree against Schroder. This leaves the sum of $178.38, on which I recommend interest to be calculated, from 1st January, 1819, due to Jacob F. Boyer, from his portion of his father’s estate, in the hands of Schroder, the administrator.
All which is respectfully submitted.
M. I. KEITH, Master.”
To this report, the defendant, Boyer, excepted, but the exceptions were overruled by the Chancellor. He then gave notice of appeal, and at the present term, moved to reverse the order of his Honor.
O’Neall, J.,
delivered the opinion of the Court.
This Court is satisfied with the conclusions of the master, on the questions of fact submitted to him. Independently of the very suspicious character of the claims set up on the part of the defendant, Boyer, it is worthy of remark, that both the note of 1816, and the claim for bacon sold, were, each of them, barred by the statute of limitations, before the note of 1825 was given. In legal contempla» *342 tion, they were regarded as paid ; and this legal presumption is much fortified by the fact, that the parties considered it necessary, that a note should be given, in 1825, only for the money alleged to ^ave ^een previously loaned. We might well conclude, that this was the only unsettled transaction between them.
As to the note of 1825, f did at first feel some difficulty; but on a careful examination of the case, 1 am satisfied that the master’s conclusion is correct. A party paying money has, at the time he pays it, the right to direct how it shall be applied ; but if he does not direct the application, then the party receiving it may apply it to such debt of his debtor, as he may choose. On what account money paid, or articles delivered, were paid, or delivered, and received, is always a question of fact; and the proper answer to the inquiry, is often to be collected from the circumstances attending the transaction. In the case before us, the money paid, and the articles furnished, to Boyer by Schroder, were all anterior to the note. If they had been intended as payments on account of the money loaned, the note could not have been given; for they greatly exceeded it in amount. It is more in the ordinary course of things, that the administrator should have made these advances, on account of Boyer’s distributive share of his father’s estate, which was in his hands; and this is fully sustained by the fact, that the parties did not, when liquidating an old debt, apply them to its payment.
The master’s mode of making up the account, however, is erroneous. The payments, and advances, in money, or goods, to Boyer, should, in the years, when paid, or delivered, be deducted, first from the interest then due on his distributive share; and if they exceed the interest, the excess should be deducted from the principal, and the interest computed on the balance. The case is therefore remanded to the master, to make up the accounts according to these principles.
Johnson, J., and Harper, J., concurred.

Order modified.